JOHN P. RICHARDSON vs. WILLARD DAGGETT.

Where on the sale of property belonging to a *feme covert*, a promissory note was executed to her and her husband, during coverture, for the purchase money,—it was held that said note survived to the wife on the death of the husband, and that she, and not the administrator, had the right to endorse it.

This was an action on a promissory note, executed by the defendant, and made payable to Ellick Powell, since deceased, and Mary D. Powell, his wife, and endorsed or transferred to the plaintiff by the said Mary, since the death of her husband. Plea, *non assumpsit*, and issue joined thereon to the court by the agreement of the parties. The plaintiff offered in evidence a contract in writing between the said Ellick and Mary, executed previous to their intermarriage, and dated March 10th, 1827, by which it was agreed between them that the estate then belonging to the said Mary, was, after marriage, to remain subject to her sole control. To this the defendant objected, as inoperative and void : but the objection was overruled, and the writing read in evidence. It was then proved that the said Mary, before her intermarriage with the said Ellick, was a widow, owning a considerable real and personal estate, and that the said Ellick was a widower, much involved in debt, and destitute of property ; that, soon after their intermarriage, the said Mary disposed of her property at the west, and they came to live in Burlington ; that the proceeds of this property, or a part thereof, was soon after invested in the purchase of a house and lot in the village of Burlington, called the Harrington place, the title of which was vested in E. T. Englesby, Esq., in trust for the said Mary ; that about the 10th day of March, 1830, an arrangement was made between the said Ellick and Mary, and all others concerned, by which the Harrington

place was exchanged for a house and lot, called the Mansion-house, in Burlington, owned by Isaac Warner. Whereupon Englesby, with the said Ellick and Mary, executed a deed to Warner of the Harrington place, and Warner deeded the Mansion-house to Heman Lowry to hold in trust for the said Mary ; that in July, 1830, the Mansion-house was sold to the defendant, the said Lowry, with the said Ellick and Mary, joining in the deed to defendant, who made some payments to said Mary, and executed several notes and a mortgage for the balance of the purchase money, the mortgage being given to the said Mary alone. At or near the same time the defendant purchased some furniture in said Mansion-house ; and the note in question was given either in part payment for the house, or in payment for the furniture. The house, land and furniture, were equally acquired by means of the said previous estate of the said Mary.

It was further proved that the said Mary was always reputed the owner of said property, real and personal ; also, that all contracts and dealings in relation to the same, were transacted in her name, with the assent and concurrence of the said Ellick, who often recognized her ownership of the property in his conversations and transactions relating to it. The said Ellick died about October, 1830.

Administration had been granted upon his estate ; but his administrator had not inventoried or claimed the said notes executed by the defendant. After the death of the said Ellick the said Mary, claiming to be sole owner of the note in question, transferred and delivered the same to the plaintiff. The said Isaac Warner, being sworn as a witness in the case, testified, that upon the exchange of the Harrington place for the Mansion-house, a considerable sum, (near $2000,) was due to him for the estimated difference in value between said pieces of property ; and that for this sum he took notes signed by said Ellick, who executed the notes alone at the request of the witness, and they were secured by a mortgage on the same property, executed by said Ellick and Mary, with said Lowrey—that no part of said notes had ever been paid—and that he understood the defendant purchased the property as subject to the mortgage to witness.

The defendant contended that, upon these facts, the property in said note appertained to the said Ellick exclusively, and that, upon his death, the legal ownership and right of action had become vested in his representative. But the court decided, that the legal property in said note remained in the said Mary, and that

CHITTENDEN
January,
1832.

Richardson
vs.
Daggett.

CHITTENDEN the transfer to the plaintiff gave him a sufficient title to sustain the
January, 1832. action. Judgement for the plaintiff.

Richardson
vs.
Daggett.

The defendant filed a bill of exceptions, stating the foregoing facts, on which the case came up for the opinion of this Court.

*C. Adams, for the defendant.*—1. The marriage agreement could not control the operation of the law relative to the property of the parties. Whether this agreement could be enforced in chancery is not material to enquire. At law it was annulled by the marriage. It is settled that, by mere operation of law, the property of the wife is transferred to the husband upon the marriage. Any agreement of his to control this operation will be ineffectual. It cannot be done without the intervention of trustees. There are cases where property devised, or otherwise given, to the wife, for her separate use, has been protected in chancery. But no case can be found where a gift, or other conveyance by husband, has been held good at law.—*Reeve's Dom. Rel.* 86, 87, 89.

2. But if this marriage agreement had been binding after the marriage, it related only to the personal estate. E. Powell, therefore, had the use of the real estate during his life, and on its being turned into money, the money became his.

3. The Mansion-house was not the sole property of Mrs. P. It was bought in part with the avails of the real estate, which we contend was E. Powel's. E. Powell alone executed his notes to the amount of $2,000. Mrs. P. is not legally responsible for these notes. They could not be collected of her.

4. Mrs. P. had no legal interest in the notes. Her interest could not be increased by the circumstance that they were made payable to her and her husband. If they had been made payable to her alone, they could not have been sued in her name alone.

5. But the legal interest was in E. Powell, and subject to his sole control.—*Barlow vs. Bishop*, 1 *East*, 432; *Arnold vs. Revoult*, 1 *Brod. and Bing.* 444; *Ankerstine vs. Clark*, 4 *Term Rep.* 616; *Brown vs. Lane*, 2 *Mod.* 217; *Bayl. Bills*, 35; *Co. Lit.* 112, *a.*; *Com. Dig.* 78; *Martin vs. Connor*, 1 *Sw.* 516; *Bidford vs. Way*, 2 *Bl.* 1236.

6. There is a class of cases where, upon promises made to the wife for her labor and skill, &c., she being, as is said, the meritorious cause, suits have been sustained in the name of the husband and wife. But in every case it is expressly said that the suit may be brought in the name of the husband alone. By the consent of the husband she *may* be joined; but it is no where said she *must.*

*Pratt and wife* vs. *Taylor, Cro. Eliz.* 61; *Brashford* vs. *Buckingham, Cro. J.* 77; *Aleberry* vs. *Walby,* 1 *Str.* 229; *Buckley and wife* vs. *Collier,* 4 *Mod.* 156; *Same case,* 1 *Salk.* 114; *Philliskirk* vs. *Pluckwell,* 2 *M. and S.* 393.

CHITTENDEN,
January,
1832.

Richardson
vs.
Daggett.

7. Mrs. P. was not joint tenant with her husband, and took nothing by survivorship. I am not aware that the *jus accrescendi* attaches to personal property. The death of Powell has not conferred any right which she had not before. She could not endorse the note. It could not be sued in her name, if he was alive. He could sue it in his name. She could not be joined in the suit without his consent,—*Reeve's Dom. Rel.* 60, 117, 130; *Chit. Pl.* 19, 20, 21; *Palmer* vs. *Trevor,* 1 *Ver.* 261; *Com. Con.* 545; *Griswold* vs. *Penniman* 2 *Con. R.* 564.

8. Her right depended entirely on the will of her husband; and until some *act* by the husband to transfer an interest, the notes remain his sole property. This *act* must be subsequent to the execution of the notes. The mere execution of the notes in the names of both will not give her any interest, as it is still subject to the control of the husband. By bringing a suit in the names of both, it is said, and rightly, that the husband transfers a part of the interest.

9. In this case no *act* was done by the huband to transfer his legal interest to his wife.

*Richardson, for plaintiff.*—The question before the Court is whether the note survives to said Mary, and became her property, or, on his death, became the property of said Ellick's representative, the administrator? 1. It is not contended in this case but that the husband, by marriage, acquires an absolute property in the personal chattels of the wife, such as her money, carriages, cattle and household furniture. But there is a description of property, among which are *choses in action,* as bonds, notes, and mortgages, to which he has not an *absolute,* but an *inchoate* right— and to establish an absolute right of disposal, the husband must either change the nature of the interest, or reduce it to possession by action at law. If the contract be made for the benefit of the wife, while a *feme sole,* he cannot sue alone on such contract: the suit must be brought in their joint names; and on perfection of the action by judgement and execution during her life, the interest becomes absolutely his.

2. The right of survivorship to the wife of certain kinds of property, on the death of the husband, is admitted by all elementary writers upon the English law. It is laid down by *Chitty* in his

CHITTENDEN,
January,
1832.
——————
Richardson.
vs.
Daggett.

treatise on contracts, *p.* 38, that unless a joint suit in the names of husband and wife be brought on a contract made for the benefit of the wife while a *feme sole*, and reduced to possession, the husband can sue only as administrator of his wife, if he survives her ; and in case she survives him, the debt still outstanding, she is entitled thereto, and his personal representative has no claim. And in his treatise on pleading, *(ps.* 20, 21,*)* it is fully laid down, that if the wife survives, she is entitled to all choses in action, to which she was entitled before coverture, and not reduced into actual possession, and even to a debt due upon a judgement recovered by husband and wife, whether obtained for a debt due to the wife whilst sole, or upon a contract made with the wife during coverture, where she is the meritorious cause of the action.   And if in such cases the husband die pending the suit, it will not abate ; but the death of the husband being suggested, she may proceed to judgement and execution.   *Comyn* adheres to the same doctrine, when he says, " If there be a judgement for husband and wife upon a debt due to the wife, the survivor shall have it."   *Hammond* in his work upon parties, *p.* 196, says, " Rights arising by the breach, during coverture, of simple agreements made with the wife, *dum sola,* belong jointly to the husband and wife : they remain with the survivor of the two."   And again, the same author says, " So long as the thing remains in action, and no suit for its recovery has been instituted, so long it is important to maintain the wife's interest therein ; since, otherwise, was the husband, under these circumstances, to die, the right would go to the personal representative, and the wife cut off from what in justice is her due."   The same doctrine is also held by *Chancellor Kent,* in his commentaries, *(vol.* 2 *p.* 113, 114,) where he says, " If the husband die before he recovers the money, or alters the security, the wife will be entitled to the debts in her own right, without administering on his estate, or holding the same as assets for his debts."   So much for elementary writers upon this subject—men of sound legal learning, and great reputation in courts of justice, both in England and this country.

3. But in *Johnson's Rep. vol.* 10, *p.* 51, and *Mass. Rep. vol.* 16, *p.* 480, are two cases directly in point, by which the doctrines above advanced are fully recognized and enforced, *Chief Justice Swift,* of Connecticut, to the contrary notwithstanding.   In the first case, a bond was given to husband and wife jointly, for their maintenance during their joint and separate lives ; and when after judgement on said bond in their favor, the husband, and, after judgement on said bond in their favor, the husband, and, after

CHITTENDEN,
*January,*
1832.

Richardson
*vs.*
Daggett.

him, the wife, died,—it was holden that such bond was valid— that the husband and wife were properly joined—that the wife's interest in the judgement survived to her—and that her executor might bring *scire facias* on such judgement. In the second case, a note and mortgage made to husband and wife were adjudged to go to the wife, if she survived her husband, and not to the executor of the husband.

4. It is the true policy of all civilized governments to *encourage*, rather than *retard*, matrimonial contracts. The establishment of a doctrine, that all the interests of the wife are merged and vested in the husband by marriage, would very much discourage, if not prevent, women of property from entering into such alliances.

5. It is right and just, that a *feme covert*, in the event of surviving her husband, should exclusively enjoy what her own industry had accumulated whilst sole; and also that of which she was the meritorious cause during the coverture. And where we find a chose in action, executed to the wife while sole, or to her and husband during coverture, she being the meritorious cause, if it be not reduced to his possession, the just inference is, that it was intended to operate for her benefit. And it is equally the duty of courts of law and equity to carry such intention into effect.

Lastly—By the articles of agreement between the said Ellick and Mary, previous to the marriage, and their acts in relation to her property after marriage, it will appear to the Court, that by solemn covenant, her property was to be kept distinct from said Ellick's; that the note in question, as appeared on trial, was given for her property, part real and part personal, the former of which had been conveyed and kept in trust for her according to said agreement. And we ask the Court legally and equitably to enforce the contract according to the intention of the parties.

PHELPS, J.—A single question only is raised in this case. It is whether the note in question passed, upon the decease of E, Powell, to his administrator, as being his sole property, or became, upon that event, the sole property of Mary Powell, by right of survivorship. In the former case, the endorsement by Mary Powell must be regarded as ineffectual, she having no interest in the note to be transferred, and of course the plaintiff can have no right to recover on it as her endorsee; but in the latter case, his right of recovering is not contested.

In discussing this question, it is not necessary to advert to any considerations of fraud in regard to creditors, nor to enquire what

CHITTENDEN
January,
1832.

Richardson
vs.
Daggett.

remedy might be successfully resorted to by the creditors of E. Powell, in case his estate should prove insolvent. The present defendant stands, not in the relation of creditor to that estate, but in that of a debtor, either to the plaintiff, or, if his position be correct, to the representative of the deceased payee. It is therefore not competent for him, to fortify his defence by any considerations, drawn from the policy of our laws in affording protection to creditors against fraudulent or collusive dispositions of property. The subject is mentioned, simply with a view of guarding against any inference from our decision, which might bear upon a question of that character. We have considered this case without reference to the rights of creditors, and simply as a question arising between the widow and the heir.

The subject of enquiry in this case, although new with us, has been much agitated elsewhere; but unfortunately, there is not in the law on this subject, that perfect symmetry, nor that coincidence of authority, which might be desired. The difficulty is probably inherent in the subject. Our law having originally vested in the husband upon marriage the personal property of the wife, and divested her during coverture of the power of contracting, it would seem that its symmetry required, that all the property of the wife, either held before marriage or acquired afterwards, should vest where the power of contracting and its consequent responsibility are placed, in the husband. With respect to real estate, however, the law has always been otherwise, giving to the husband the usufruct during coverture, and, in some instances, a life estate after; but continuing the fee in the wife to the purposes of alienation, descent and devise. And when we advert to the superior importance attached to this species of property, and the comparatively low estimation in which personal estate was held, at the period when this law was established, we perceive that the policy of the law was originally altogether more favorable to the female sex than is generally imagined. At the same time, various devices have been countenanced by the law, especially in the courts of chancery, for the securing to a feme covert a separate property. Her choses in action also are secured to her, subject however to a right in the husband to reduce them to possession during coverture. But even here, she must be joined in the action upon the ground that they survive to her if not reduced to possession during coverture. In this state of things, the law not having adopted the rule of total exclusion of the wife from an interest in property, nor admitted her full capacity to acquire and hold property, in any

CHITTENDEN,
January,
1832.

Richardson
vs.
Daggett.

manner during coverture, it becomes a matter of much difficulty to draw the line of distinction between her rights and those of her husband, or to determine the precise point where her interests cease to be regarded. It is probably owing to this circumstance, that so many subtle, not to say fanciful, distinctions have been made, and no little confusion shed upon the question, in what cases she should be joined in the action. Whether our law, or that which obtains in France on this subject, be best adapted to promote the general prosperity and happiness, is not for us to determine. But should the system of imprisonment for debt be generally abandoned, the time may not be far distant, when it will be a matter of serious consideration with legislatures, whether a full legal capacity in married women to acquire and hold property, might not mitigate the evils of many an unfortunate connexion.

In discussing the question presented by this case, no importance can be attached to the suggestion, that a *feme covert* is not to be regarded as having a separate existence. This position is utterly untenable. With respect to her real estate, she is regarded as the legal owner. She may convey by deed, or devise by will, and no conveyance of her husband will pass her estate without her concurrence ; nor at common law, can her right of dower be divested by any conveyance of his. Her choses in action remain vested in her while they remain such. She must join in the action if they are put in suit, and if the husband die pending the suit, she is entitled to them and not his executor. She may hold property as *cestui que trust*, and, as is admitted on all hands, she may in many instances join in a suit upon a contract made during coverture, and acquire an interest in the judgement which in case of the husband's decease carries with it the whole interest. It is conceded, therefore, that she may acquire an interest in a contract made during coverture which interest the law will recognize and protect. The only remaining question, is whether this is such a case.

If there be any case in which a feme covert can join in a suit on a contract made during coverture, it would seem to be that in which the contract is in writing, and she is named in it as a party. In accordance with this rule are all the authorities. She may join in an action on a bond to her and her husband.—See 1 *Strange*, 230 ; 4. *T. Rep.* 616 ; 1 *Wilson*, 224. So she may join in a suit for her personal labor, where there is an express promise to her. And the law is the same in all cases where there is an express promise to her.—See 1 *Chitty's Plead-*

CHITTENDEN,
January,
1832.
_____
Richardson
vs.
Daggett.
*ings,* 19, and cases there cited. The rule is also laid down by *Rolle, Fitzherbert, Brown Ab., Comyn, Chitty, Selwyn, Bacon, Hammond on parties,* and *Kent,* in his *Commentaries,* and is supported by abundant authority. And the rule applies to a promissory note.—See 2 *Maule & Selwyn,* 393.

She may join also where she is the meritorious cause of the claim or right of action.—*Chitty's Pl.* 17, 18 *and* 19 ; 3 *Lev.* 403; 4 *T. R.* 616 ; 1 *Ld. Ray.* 398 ; *Cro. Eliz.* 61.

In this case Mary Powell might undoubtedly have joined with her husband in an action on the note in question, were he living. She is not only named in the note, but was unquestionably the meritorious cause of the right of action. The case states that Ellick Powell was much embarrassed, and destitute of property ; that Mary Powell was possessed of a considerable estate, which estate was exchanged for real estate in Burlington, the title to which was vested in trustees, and that the note in question originated in a sale of that property. The circumstance, that Ellick Powell executed the notes to Warner, is not important, as the property of the wife was doubtless relied upon as the means of payment.

If she might have joined her husband in a suit on the note, is it not because she has a right vested in her, which is to be enforced by that suit, and which the law will recognize ? I am aware that the husband may sue alone, and appropriate the property to himself ; but this arises from the superior control which the law gives him over the interest of the wife. He may also appropriate her choses in action appertaining to her before marriage to his use ; but if he omit to do so, they survive to her. And this power is no more inconsistent with the right of survivorship in the one case, than in the other.

The correct view of the subject seems to be this : that the wife has in such cases an interest in the contract which the law recognizes, and will enforce, subject however to be defeated by the husband, in the same manner that he may extinguish her interest in her choses,in other cases ;—that this interest remains until extinguished by him, and if he omits to do so, it survives to her. It is difficult to conceive upon what principle an action can be sustained in her name, even jointly with her husband, unless there is some preexisting right to support it.

It has been contended, that this interest in the wife originates in the circumstance of her being joined in the action, and depends upon the election of the husband ; and that no right exists in her

until the action is brought. This is certainly inverted logic. <span>Chittenden,<br>January,<br>1832.</span>
That a right is created by the mere attempt to enforce it, or that
the mere incident to a right is its cause or source, is a metaphysi- Richardson.
cal puzzle, in solving which we should find little aid in analogy. <span>vs.<br>Daggett.</span>
Were this the correct principle however, it would seem to apply
in all cases where the husband chose to unite with his wife in
bringing the action; yet it is only in those cases where the wife is
the meritorious cause, or when there is an express promise to her,
that she may be joined. The plain inference from this is, that
she is joined in such cases, upon the intelligible and rational prin-
ciple, that she has a right created by the contract, and in confor-
mity to the general rule, that the action may be brought by those
in whom the right is vested.

Again, it is laid down in the books, that the wife may join where
the cause of action would servive, but not where it would *not* sur-
vive. If the right survives in consequence merely of her being
joined in the action, the rule is nonsensical. The rule, however,
presupposes another criterion, and that there is a class of cases in
which the right would survive without a suit brought. If she can-
not join unless the cause of action would survive, it follows, *e con-
verso*, that where she may join, the cause of action survives.
There is no doubt that this is such a case, and, therefore, we infer
that the cause of action in this instance survives.

This view of the subject preserves the analogy of the law. It
is a general rule, that where the cause of action exists in two per-
sons jointly, the cause of action, in case of the decease of one, sur-
vives, and is vested solely in the other. It is admitted, that the
husband may defeat the right of the wife in a case like the pres-
ent: but this is an anomaly in the law, growing out of the pecu-
liar relation existing between them; and where this power is not
exercised there appears no good reason why the usual conse-
quences of a joint interest or right should not follow.

Again, it is settled that the wife is entitled, as survivor, to a debt
due upon a judgement recovered by husband and wife, whether
it be recovered for a debt due to her *dum sola*, or *upon a con-
tract made during coverture*. It is difficult to perceive, how the
recovery of a judgement by them jointly should have this effect, if
an express contract would not carry the same consequence.
That her right does not depend in such case upon the mere cir-
cumstance of obtaining a judgement, is apparent from another
rule which is well settled, that if she is properly joined in any
case, and the husband die pending the suit, the cause of action
44

CHITTENDEN survives.   See 1 *Chitty's Pl. p.* 21 ; 2 *Bla. Rep.* 1239 ; *Cro.*
*January,*
1832.    *Jac.* 77, 205 ;  *Co. Lit.* 351 ; 1 *Vernon,* 396 ; 4 *T. R.* 616 ;
Richardson   *Com. Dig., Baron & Feme, F.* 1.
*vs.*
Daggett.         The same rule is laid down by *Kent,* 2 *Kent's Com.* 116 ; by
*Hammond on parties p.* 198 ; in 2 *Vernon,* 683, and 2 *P. Wms.*
496.

The inference from this rule is irresistible, that the cause of
action survives in all cases where the wife may be joined, unless
the right of the wife is considered as originating in the act of the
husband in commencing the suit.    For such an idea, no prece-
dent is found in analogous cases ; nor is there any instance of the
kind known to our law, except in the single instance of a *qui tam,*
or popular action, which is a creature of statute, and governed by
principles having no applicability to the present case.

Another strong argument in support of the position taken by
us, is derived from the fact, that, in a court of chancery, a security
like the one in question has ever been considered as surviving to
the wife.    We know no good reason, why a different rule should
obtain at law.    There are indeed cases, where in consequence of
the different mode of proceedings in the two courts, a different
result would be produced.    But this can be justified, only upon
the ground that the mode of administering justice, peculiar to each,
is more thoroughly adapted to the great ends of administering jus-
tice in some cases than in others.    Courts of law cannot, in all cases,
adopt with propriety the rules of chancery, because the forms of
proceeding, and the powers appertaining to the former, do not al-
ways admit of the same effectual and salutary application and en-
forcement of the rule which may be had in the latter.    But where
no adventitious difficulty of this nature occurs, but an abstract
question of right, unembarrassed by technicality or form, is pre-
sented, no good reason can be assigned for contradictory or con-
flicting decisions.

This question has undergone a discussion in two of the neigh-
boring states.    The case in 16 *Mass. Rep.* 480, was, in all im-
portant particulars, similar to this.    Upon full discussion and de-
liberation, it was there held, that a note and mortgage, executed
to husband and wife during coverture, survives to her.    A simi-
lar decision has been made in New-York ; see 10 *John. Rep.* 51.
Although these cases are not to be regarded as strictly of au-
thority in this state, yet they are entitled to great consideration, as
the opinions of two eminently respectable tribunals.

We are referred to two authorities, as sustaining the contrary

doctrine.  The first is *Reeve's Domestic Relations, p.* 62, and CHITTENDEN January, 1832. the other is the case of *Griswold* vs. *Penniman,* 2 *Conn. Rep.* 565.  The opinion of *Judge Reeve* is of great weight.  Rever- Richardson vs. Daggett. ing him as we do, as one of the fathers of the American bar, and as an early and able commentator upon our jurisprudence, his opinions have been received with that deference, which by com- mon - consent is accorded to superior intelligence and superior worth.  Infallibility, however, is not the property of the human in- tellect ; and if there be any science, which, from its multifarious details, its refined distinctions, and the compass and variety of its application, is beyond the grasp of a single mind, it is probably the science of the law.  Of the ablest jurist it may often be justly said, " *Aliquando dormitat Homerus.*"

*Judge Reeve* lays down the doctrine contended for by the defendant, but he admits that there are respectable authorities to the contrary ; that the rule has ever been otherwise in chancery, and finally, that as this subject falls generally within the cogni- zance and control of that court, the rule which obtains there may be considered as having prevailed.

The case of *Griswold* vs. *Penniman* bears no analogy to this. That was a contarct respecting a distributory share of an intestate estate, which came to the wife by inheritance, and came within the common rule, that the personal property of the wife in possession vests in the husband.  It was not necessary, in that case, to de- cide the question now presented.  The opinion of *Judge Swift,* however, it must be admitted, covers that point now in controversy. He considers the circumstance that the husband may, in such case, sue alone, as decisive.  But is not the fact that she may join in the action, and that in that event the cause of action would survive, equally decisive ?  He considers also, that the rights of the wife are dependant upon the election of the husband ; and that the bringing the action in their joint names determines that election, and vests the right in her.  The idea that her right originates in this circumstance, has already been considered.  At the same time, it must be admitted, that her rights do in a sense depend up- on his election, inasmuch as he may exclude the wife from all participation in the right of action.  The question, however, is as to the consequence of his failing so to determine.  We consider, in analogy to the law in regard to her choses in action, existing be- fore marriage, that, where the law does recognize such an interest in her as warrants her being made co-plaintiff, that interest, unless extinguished by the husband, does survive.  But admitting that

CHITTENDEN,
January,
1832.

Richardson
vs.
Daggett.

the right of survivorship does, in such case, depend upon the husband's election, is there no other mode of determining that election, than simply by bringing a suit? We think there is; and that the intent of the husband may be inferred, under circumstances, from the act of taking the security in a joint form. Adopting then the principle of *Judge Swift*, is there not enough in this case, to warrant the conclusion, that our decision is in perfect consonance with the intention of the husband? Ellick Powell, as is stated in the case, was in embarrassed circumstances and destitute of property. The wife was possessed before the marriage of considerable estate. By an agreement, made between them before marriage, this estate was to be subject to her separate and sole control. This agreement, it is argued, became, by the subsequent union between the parties, extinguished. Be it so; yet there is no difficulty in considering it, as furnishing evidence of his intention, however inoperative it might be as a contract. The property was kept subject to the wife's control—the title to it, upon its re-investment, was vested in trustees—and there it remained, until, by means of a sale, with the concurrence of all parties, it became at last invested in the security in question. Can there be a doubt, under these circumstances, of the intention of E. Powell? Does not his conduct in relation to this property, from the time of his marriage, to that of his decease, indicate throughout a settled purpose to adhere to the agreement, which, whether it could be legally enforced or not, was certainly binding in conscience and common morality? Shall forced presumptions be made, or the memory of the dead reproached by the supposition, in despite of this evidence, that he entertained the purpose of violating his faith, and leaving her who had confided in it, in case she survived him, bereft of her subsistence?

It is only necessary to add, that there is no doubt, that a court of chancery would treat this note as the separate property of the wife. No reason is furnished us, nor do we believe can be, why we should deny her, on this occasion, that protection in her rights, which, in another capacity, we should be forced to award to her.

The judgement of the county court is, therefore, affirmed.