## WELLS vs. WESTHAVEN.

Prior to the statute of 1817, a wife had a derivative settlement from her husband, and children from their father.

When a widow gained a settlement in her own right, her minor children living with her, took her settlement.

But when a widow gained a settlement by marriage, her children by a former marriage did not follow her settlement thus obtained.

While the act of 1801, in relation to warning out was in force, it was not necessary to warn out minor children living with either of their parents, to prevent their gaining a settlement.

A female child being with her mother in the family of her father-in-law, for more than a year, without being warned, did not thereby gain a settlement in her own right.

On the trial of this case, which was on an appeal by the town of Westhaven from the order of removal of two justices, of Delia Turner, a pauper, from the town of Wells to said town of Westhaven, both in Rutland County, on issue, joined to the Court, of " unduly removed, alleging that the place of the last legal settlement of the said Delia, was not in said town of Westhaven," it appeared in evidence that the said Delia was the daughter of —— Turner and Electa his wife, and was born in Middlebury, in the County of Addison, in April, A. D. 1802, at which place the said Turner, the father, resided at that time, a period of over one year.—That when the said Delia was about nine months old, the said Turner removed with his said wife and daughter to Chesterfield, in the State of New-York, where, and at Peru in said State of N. York, he resided with his said family ten or eleven years; from which place, or State, said Turner, with his said family, removed to Cornwall, in the County of Addison, where he resided with them less than one year, when the said Turner died.—That the said Electa and said Delia then removed to Fairhaven, in Rutland County, where they resided

RUTLAND,
January,
1833.

Wells
vs.
Westhaven.

until April, 1814; and in the said month of April, 1814, the said Electa was married to Ichabod Mitchell, of Westhaven, who then, and for a long time before, had lived in Westhaven; and immediately, with the said Delia, her daughter, went with her said husband to said Westhaven, and there resided with said Mitchell until November, 1819, when the said Mitchell and said Electa removed to the said town of Wells, where she has resided ever since—the said Mitchell dying in said Wells, where he had resided ever since he removed to that town, in August, 1829.— That the said Delia resided at said Westhaven from April, 1814, with said Mitchell and Electa, until the two latter persons removed to Wells, in November, 1819; and the said Delia continued to reside in said Westhaven four or five years after said Mitchell and Electa removed to said Wells, in 1819—then went to Orwell, in said County of Rutland, and there resided about two and a half years; and then returned to said Westhaven, where she resided till September, 1829, when she went to live with her mother in Wells, where she resided until removed.

The Court charged the jury, that the said Delia did not gain a settlement in Westhaven by her residence as aforesaid; and that, although her mother, by her intermarriage with Mitchell, acquired his settlement in Westhaven, yet that settlement was not communicated to her daughter by a former marriage; and as there was no evidence of the said Delia the pauper's having gained a settlement in Westhaven, except by her residence there under the circumstances before mentioned, she did not thereby gain a settlement in Westhaven.

The jury, thereupon, returned a verdict for the town of Westhaven.

The plaintiff excepted to the opinion of the Court, contained in the charge.——

Whereupon, The case passed to this Court for further adjudication.

*Argument for the plaintiff.*—On hearing of this case, the counsel for the plaintiff will submit, that the order of removal of the justices ought to be affirmed, upon the following considerations:

RUTLAND,
January,
1833.

Wells
vs.
Westhaven.

1. Whatever may have been the place of the pauper's settlement, at the death of her father, as her mother become legally settled in Westhaven, on her marriage with Mitchell, in 1814, the settlement of the daughter, under age, and residing with the mother, followed of course; and since the emancipation of the pauper, she has acquired no settlement elsewhere. For,

2, By statute, Nov. 4, 1817, p. 381, "Legitimate children have the settlement of their *parents*." The word in the plural, cannot, reasonably, mean *both parents*, when *one* has deceased; but *either*, in such case; and so are the authorities.—1 Black. Com. 363, and note, 25.—2 Str. 746, Parishes of Paulspury and Woodend.—2 Ld. Raym. 1473.

3. Whether a woman, after the death of her husband, acquire an *original* settlement, or a *derivative* one, it would seem that it ought to be followed by the same results, respecting the settlement of her children, under age, and residing with her.—5 Con. Rep. 584.

It is the policy of the law, and a dictate of justice, as well as a right essential to personal liberty, that families are not to be separated, without necessity.—1 Str. 544.—5 East. 118, *Rex* vs. *Eltham*.—1 Black. Com. 361.—1 Str. 438, *Eastwoodhey* vs. *Westwoodhey*.

*Argument for the defendant.*

1st, That the pauper's place of legal settlement in this State, is that of the last legal settlement of her deceased father, Isaac Turner; which, as appears from the case, was in Middlebury, in the County of Addison.—Jac. L. Dic. Vol. v. p. 216.

2d, That Electa Turner, the mother of the pauper, having acquired a new settlement for herself, in April, 1814, by her marriage to Ichabod Mitchell, did not in any respect alter or change the previous settlement of Delia, but Delia still continued to hold the settlement of her father.—2 Com. Dig. Vol. 4, p. 886.—1 Carthew & Salkeld, 482.—Burrows' Settle. Cases, 2 749.—Carthew, 449.—2 Salkeld, 528.

3d, That inasmuch as it does not appear, that Delia Turner, the pauper, has resided in Westhaven for the term

·of seven years, ·since she attained the age of .eighteen years, she has gained ·no legal settlement therein.

The opinion of the Court was pronounced by

Williams, J.—The pauper was removed from Wells to Westhaven : it was therefore incumbent on the former town to show a settlement in the latter : for that purpose, they rely on the fact that her mother acquired a settlement in the town of Westhaven, by her marriage with Mitchell, in the year 1814 ; and that her daughter derived a settlement from her in the same town. It appears that the father'of the person removed, after the passing of the statute of 1801, in relation to settlements, resided in the town of Middlebury more than a year, and that the pauper was born in that town in the year 1802. There was no proof that he was warned out, during that residence. This of course gave him a settlement in that town, which was also the settlement of his daughter, unless she acquired a settlement in Westhaven. In the enquiry whether she had thus gained a settlement, we must be governed by the law as it existed previous to the passing of the statute of 1817, as it is not contended that she has acquired any settlement since. Previous to the passing of the latter statute, there was no statute of this State which directly gave the wife the settlement of her husband, or children the settlement of their parents ; but a settlement was gained by marriage by construction of law, independent of any statute. Although no provision upon this subject was expressly enacted, yet the principles of the common law, in relation to derivative settlements, were adhered to in this State. The wife and children being incapable of gaining a settlement for themselves, and being dependent for support on the husband and father, who has the control both of their persons and personal services, derive from him his settlement, which they retain until they gain a settlement for themselves in their own right. As the law in relation to derivative settlements depended upon the principles of the common law, and not on any statute regulations, the decisions which have been had in the Courts of common law in England, are authorities on any question upon this subject arising anterior to the session of the Legislature in 1817, the

same as upon any other question arising out of the common law.

Upon examining these authorities, it will be found that the decisions have been uniform—that although where a father gains a settlement for himself, it is communicated to his minor children, whether living with him or not; and after his death, when the mother, a widow, acquires a new settlement in her own right, this is also communicated to her minor chi[dren; yet a settlement which she acquires by marriage is not communicated to her children by a former husband, but they still retain the settlement of their father. Probably the reason for this distinction was, that the second husband has no legal control over the children of the first husband, is not bound to support them, nor entitled to their services. But whatever may be the reason, the law is so settled, both in England and this country.— *Cumner* vs. *Milton*, 2 Salk. 528.—*Woodend* vs. *Paulspury*, 2 Ld. Ray. 1473.—*Freetown* vs. *Taunton*, 16 Mass. 52.— *Dedham* vs. *Natick*, do. 135.

Judge Reeve, to whose memory and whose worth, a just and elegant tribute has been paid by one of my brethren, (4 Vt. Rep. 347) states the law to be the same in Connecticut.—Reeve's Dom. Rel. 298.  Nor is the principle impugned by the decision in the case of *Danbury* vs. *New-Haven*, 5 Con. 585, which was so much relied on by the counsel for Wells.

These authorities are decisive of the case before us, unless it should be considered that the pauper gained a settlement in Westhaven by her residence there for more than a year without being warned out.  This will depend upon the decision of the question whether she was liable to be warned out by virtue of the statute of 1801.  It appears that she went with her mother to Westhaven, to reside in the family of her step-father, Mitchell, being then only twelve years of age; and may be considered as going there for education.

An infant gains no settlement in his own right, until emancipated from the family of the father or mother.— Emancipation is defined to be contracting a new relation inconsistent with being part of the family.  There is nothing in the case which shows that the pauper was thus

emancipated. The statute which provided for warning out persons moving into and residing in any town, could have contemplated only those who were at liberty to act for themselves, or were emancipated from the family of their father or mother, and never was intended to apply to infants, who, though destitute of parents, went into a town for education, or those who went for the same purpose under the care & protection of a parent or friend. The pauper, under the circumstances in which she went to Westhaven, was not liable to be warned out of town, nor did she acquire a settlement by her residence there without being warned. She was living with Mr. Mitchell, who was *quasi* a guardian, for the purpose of education only.

There was formerly a statute in Massachusetts similar to our statute of 1801, and it has been decided in that State, that it was not necessary to warn out slaves, servants, or minors, to prevent their gaining a settlement, or an illegitimate child, who, at the age of eleven years, was abandoned by her mother, and left her, and resided in another town until long after she was of age, but that the child retained the settlement of her mother.—*Winchendon* vs. *Hatfield*, 4 Mass. 123.—*Somerset* vs. *Dighton*, 12 Mass. 383.

The result to which we have arrived, from a consideration of the case, is, that the pauper has gained no settlement in Westhaven, and was unduly removed.

The judgement of the County Court is therefore affirmed.

*Harmon & Royce*, for Wells.
*Kellogg & Ormsbee*, for Westhaven.