The OVERSEERS of the Poor of BRADFORD *vs.* the OVER-
SEERS of the Poor of LUNENBURGH.

ORANGE,
*February,*
1833.

A child, who has not been *emancipated*, will derive a settlement from the settlement of his father; and if his father dies, and his mother subsequently acquires a new settlement, by one year's residence in town, without being warned out, the child then derives a settlement from that of his mother.

But if before the mother acquires her new settlement, the child is of age; or has married; or has gained a settlement for himself; or has contracted any relation inconsistent with the relation of parent and child, and by which the mother loses her government over him; then he is *emancipated*, and cannot derive a settlement from that of his mother subsequently acquired.

This was an appeal by the Overseers of Lunenburgh from the order of removal made on the complaint of the Overseers of Bradford, against *Harvey Webb,* and others. The appellants plead, that said Harvey was unduly removed, because his last place of legal settlement was not in Lunenburgh. Issue joined to the Court.

The parties submitted the cause to the Court for consideration and decision upon the following facts, viz: That the said Harvey Webb was born in Lancaster, in the State of New-Hampshire, on the 24th day of July, 1798—That the said Harvey moved with his parents, Ashbel O. Webb and Sally Webb, into the town of Lunenburgh, in December, 1798, and resided there with his parents until the 27th day of March, 1813, when his father died.—That after the death of his father, the said Harvey resided with his mother at said Lunenburgh, until August or September, 1814, when his mother, being very poor, went to live at Newbury, in the family of John Johnson, her sister's husband, where she lived in the capacity of a hired woman about eight years.—That said Harvey still continued to live at Lunenburgh, and resided with his uncle, Theodore Webb, until the spring of 1815, at which time he went with his said uncle to live in Lyman, in the State of New-Hampshire, and continued there with his said uncle two years, and then went into the State of New-York, where he remained till the fall of 1829, when he came with his family to reside in Bradford.—That when he went into the State of New-York he had not been married.—That as soon as said Sally went to live in said Johnson's family, he hired her, and at first gave her 2*s.* 6*d.* per week, and kept a

child, which she took with her to said Johnson's, about four years old; but in the winter said Johnson gave said Sally less, as he paid for schooling said child: and after six months he gave her more, and continued to give her sometimes more and sometimes less, depending on her health, and business she had to do.—That said Johnson kept a regular account with said Sally of every thing.—That said Sally resided about eight years with said Johnson at said Newbury, and *she was not warned out of town.*—That said child resided at said Johnson's with his mother about six years, as one of said Johnson's own children.—That said Sally requested said Johnson to instruct said child (being a boy) in farming business.—That said boy was feeble at first, but was soon able to drive said Johnson's cows, and afterwards labored some on the farm.—That said Johnson had two farms in said Newbury; and said Sally kept house for him, sometimes at one place, and sometimes at another.

In view of the facts in this case, the Court decide, that the last place of the said Harvey Webb's legal settlement in this State is in said Lunenburgh: Therefore, the Court affirm the order of removal, and adjudge the said Harvey Webb, and his wife and family, as mentioned in said order of removal, were duly removed by the justices.

To which decision of the County Court, the Overseers of Lunenburgh excepted. The exception is allowed, and the case ordered to pass to the Supreme Court.

*John Mattocks, for Lunenburgh.*—1st. The mother gained a settlement in Newbury by residence. This, it is supposed, will scarcely be denied.

2d. The pauper being a minor, not having gained a settlement for himself, not married, and having contracted no connexion or engagement inconsistent with parental control, was not emancipated; and therefore took a derivative settlement from the mother, notwithstanding he did not live with her.—1 Chitty's Black. 271, note.—4 Com. Dig. 617-18.—3 Burns' Just. 334.—3 T. R. 116.—*King* vs. *Edgeworth,* same, 353.—*King* vs. *Wilton & Twambrook,* same, 355.—8 T. R. 479.—*Charlestown* vs. *Boston,* 13 Mass. 469.—*Springfield* vs. *Wilbraham,* 4 Mass. 135.—*King* vs *Rotherfield Grays,* 8 C. L. R. 95—same vs. *Hardwick,* 7 C. L. R. 62—same vs. *Wilmington,* same 180.

ORANGE,
*February,*
1833,

Town of
Bradford
.vs
Town of
Lunenburgh.

3d. It has been said, that our statute, directing Judges of Probate to appoint guardians to minor children, takes them out of the control of the mother. *Answer.* 1st, In England, the principles of guardianship are somewhat obscure : the King is guardian to all minors, lunatics, &c. and the Court of Chancery has in modern times assumed the authority to appoint guardians at pleasure, and the ordinary appoints guardians to the property of minors before distribution—Hargrave's Coke Lit. 89, and note 12.—1 Black. 369—and the father.or mother is guardian *de jure naturali*— 3 Salkeld, 175.—2 Kent's Com. 181—yet the mother, as such, is entitled to no power over the children—1 Black. 360. The reason of these decisions would seem to be the natural, not the legal control of the mother over the children. 2d, In Massachusetts, the probate acts direct the appointment of guardians to minor orphans, much like our statute—2 Dane, 4–5–6–7–8–9–12. And yet their decisions are in conformity to the English—see authorities cited under 2d head. And as Judges have often said that there is no equity, and uniformity is the principal object, and as we look to adjudged cases for most of the constructions we put upon our pauper statutes, it would be extremely dangerous to vary on account of any slight difference between our general laws and the English. Besides, the general principle is founded on good policy and natural feeling, that minor children should be settled where the head of the family is settled, to save painful separations, which would not be lessened, but increased by the death of the father; and otherwise, in many cases, the mother would have a settlement, and the children none.

4th. The case does not show any administration of the estate of the pauper's father, nor any appointment of guardian to the pauper; and it will not be presumed. But, if it will vary the case, Lunenburgh asks leave now to shew negatively that none was appointed.

*Marsh, Collamer and Chase, for Bradford.*—It may be doubted whether Sally Webb, the mother, acquired any settlement in Newbury, by the manner in which she resided there in the family of Johnson.—Act 6th Nov. 1801, Old Stat. 400.

Town of
Bradford
vs.
Town of
Luninburgh.

I. The more important question is whether, allowing she did acquire a settlement in Newbury, she communicated that settlement to her son, the pauper.—2. Bott 24.

The mother while residing in Newbury, was not a housekeeper. Her children could not be said to be a part of her family, and as such could not gain a settlement. 2 Bott 24.

In the *King* vs. *Lauton*, the Court say the true distinction is, that when the children have gained no settlement, but continue a part of their father's family, they shall follow their father's settlement.

The doctrine of this case clearly is, that when the father or mother lives as a domestic in another family, though perhaps under our statute, he or she may acquire a settlement by such residence, yet such settlement is not communicated to the children.—2 Bott 31.

In *St. George* vs. *St. Catherine*, it is said that the settlement acquired by the wife after the death of her husband, is communicated to such of her children as have never before gained a settlement for themselves.

But in examining the case it appears that the mother after the death of the father went with the children, the paupers, into St. George's, and rented a house at £12 a year and resided there with the children long enough to acquire a settlement, and that this settlement was therefore communicated to the children as part of her family. This case therefore seems to confirm the position taken above. 2 Bott 32.

The case of the *King* vs. *Woodard* was decided on the authority of the last case, and is to the same effect—but in those cases it appears that stress is laid on the circumstance that *the children resided with the mother when she acquired the new settlement.*

The reason why children do not take the settlement of the mother, acquired by marriage, is that (except for nurture while under seven years of age) they are not a part of her husband's family nor under his control. 2 Bott 37.

The *King* vs. *Barton* goes expressly on the ground of the two cases last cited. The pauper sesided with his mother as a part of her family, while she was acquiring a new settlement in her own right.

ORANGE,
*February,*
1833.

Town of
Bradford
*vs.*
Town of
Luninburgh.

It is believed that no case can be found where the newly acquired settlement of the mother was transferred to the child, except when the child resided with her as a part of her family and was thus under her control.

The case of the *King* vs. *Outon* was decided on the same ground. 2 Bott 40.

There is another class of cases, where the father never acquired any settlement, and where the maiden settlement of the mother or the settlement of her ancestors is adjudged to be the settlement of her children; but this is entirely on another principle.

II. It is contended in this case that the pauper, Harvey Webb, was emancipated from his mother, and would therefore derive no newly acquired settlement from her. To this point the following cases are relied on: 2 Bott 42, *East Woodhay* vs. *West Woodhay*; *St. Michael* vs. *St. Mathew*, 2 Bott. 44; 1 Burrows Sett Cases, 444, *King* vs. *Coldashton*, cited in 2 Bott. 46.

The case of the *King* vs. *Walpole*, is exactly in point.— The pauper at about the age of 20 enlisted into the army for four years, and became emancipated thereby from his father and family. While in the army his father had acquired a new settlement in Walpole. The pauper never removed to Walpole; he had acquired no settlement of his own. The order was quashed on the ground that the paupers legal settlement was at ———— 'which was the place of his father's settlement at the time he left the family. The son by enlisting himself and serving 4 years, became emancipated from his father's family. 2 Burr, 48.

By several successive cases in Bott, it appears that, though a child does not actually reside with his father, yet if he makes his house his holiday home, or with other relations by his father's request, or is hired out and his father takes his wages, or is indeed still under the control of his father, he is not thereby emancipated, but will follow his father wherever he acquires a settlement. Bott 50, *Rex* vs. *Halifax*; *Rex* vs. *Tottingham*, 51; *Rex* vs. ——, 54; *Rex* vs. ——, 55; *Rex* vs. *Offchurch*, 57.

In the case before the Court the pauper was seperated from his mother when she removed to Newbury in September 1814, and was never after in her family or under

ORANGE,
February,
1833.

Town of
Bradford
vs.
Town of
Lunenburgh.

her control, and we think was to every intent emancipated from her. In 1816 or 17 he went out of the country and was married and did not return till 1829. 2 Bott, 42.

In *Dumbleton* vs. *Beckford*, the point now in question seems to be settled. A girl thirteen years old living in Dumbleton with her grandmother, was removed to Beckford where her father had a settlement. It did not appear in that case that the girl or her father ever had a settlement in Dumbleton; yet the Court quashed the order, because by possibility she might have had a settlement there.

We think that the likeness of that case to the case now before this Court is worthy of notice. It does not appear in that case that the girl was ever in the place of her father's settlement, nor that the boy, in this case was ever in the place of his mother's settlement. She was not dependent on her father, at the age of thirteen for protection, support, instruction or advice; nor does it appear they had any knowledge of each other; and that is precisely the case with the boy and his mother, when he was seventeen years old, after she left him at Lunenburgh, until she died and he left the state. The Court said the girl might have a settlement at Dumbleton; and might the boy have a settlement at Lunenburgh? It is certain that the father had a settlement there and left it as an inheritance to his children, and his son Harvey never abandoned it for a moment till he left the state.

Dane says, when a father ceases to have any control over his children or any right to their services, it is not easy to devise any good reason why they should not be emancipated, and as no longer having a derivative settlement with the father on his gaining a new settlement; and when the reason ceases, the law founded on that reason ceases also. 2 Dane's Abr. 107, Sec. 15.

The cases relied on by the counsel for Lunenburgh, we think are not in point.

But we feel quite sure on the following point. That according to the laws of this State the *mother has no control over her children after their period of nurture is past, nor any title to their services.* They are therefore, from the death of their father, if past seven years of age, emancipated from their mother, according to the principles of all the cases before cited.

ORANGE,
February,
1833.

Town of
Bradford.
vs.
Town of
Lunenburgh.

By the statute the judges of probate are empowered to allow of guardians, that shall be chosen by every minor of 14 years of age and to appoint guardians for such as shall be within or under that age, and to take bonds to account to the judge or minor when he shall arrive to the age of 21 years, &c. And by another section the guardian is to make and exhibit an inventory of the estate of his ward, both real and personal &c. In short, the statute gives the guardian the entire care and custody both of the person and property of the minor, to such extent that the mother is entitled to neither, and of course not his services.

All the English authorities lay much stress on the question whether the child is or is not under the control of the parent. When he is so, whether residing directly with the parent or not he is not emancipated. But if from the connections he may have formed, or from enlistment, or other circumstances he is removed from the control of the parent, he is emancipated, and no longer takes a newly acquired settlement of the parent. The two cases relied on from 4 & 13 Mass. Rep. make this circumstance a turning point in each of those cases.

If then, by our laws the mother has or can have no control over the person, nor is entitled to the services of her children, the only ground for their taking the mother's settlement, acquired after the death of her husband, entirely fails. See 15 Com. Law Rep. 216, *Rex* vs. *Lawford*.

The opinion of the Court was pronounced by

BAYLIES, J.—The pauper's father had a legal settlement in Lunenburgh, where he resided with his family fourteen or fifteen years, and then died.

The pauper's mother, in 1814 and '15, after the death of her husband, and during her widowhood, gained a legal settlement in Newbury, by one year's residence in that town, without being warned out, according to the act of November 6th, 1801.

The pauper, while his mother was gaining her legal settlement in Newbury, resided in the family of his uncle, at Lunenburgh, and was 16 or 17 years of age.

It does not appear from the case, that the pauper, after the death of his father, had any other guardian than his mother, who was his natural guardian.

Orange,
February,
1833.

Town of
Bradford,
vs.
Town of
Lunenburgh.

We are now called upon to decide where the pauper had his legal settlement.—Was it at Lunenburgh, where his father had his last legal settlement; or was it at Newbury, where his mother gained her's?

Neither the act of 1797, nor the act of 1801, respecting legal settlements, says one word about a legitimate child deriving a settlememt from its father, or mother, or from both of them, in this State. But the act of 1797 did say, that "every bastard child shall be deemed and adjudged to be settled in the town or place of the last legal settlement of his or her mother."

The act of 1817 says, "legitimate children shall have the settlement of their parents."

But it is not to be inferred from this, that a legitimate child, before 1817, could not, in this State, derive a settlement from its father or mother, according to the principles of the common law.

I entertain no doubt on this subject. Every legitimate child born after 1797, and before 1817, who was not twenty-one years of age, and was not *emancipated,* and whose parents had a legal settlement in this State, under the act of 1797, or the act of 1801, did derive a settlement from his parents, according to the common law; that is, from his father; or, if he be dead, then from his mother—she having acquired a new settlement by residence; and not by marriage.

"A man settled in St. Katharine's, married, and had six children born there, and died; after his death, the widow went into the parish of St. George with her six children, and rented a house at £12 a year, and lived in it with her children four months. The single question was, whether the children should be settled where their father was last settled, or have a settlement with the mother in the parish of St. George. And the whole Court were of opinion that the six children were settled in the parish of St. George, where the mother's last settlement was; and by *Parker,* C. J. There is no distinction between the settlement of the children with their father or mother; for they are as much her's as the father's, and nature obliges her as much as the father to to provide for them—so does the law; and every argument that holds for their settlement with the fa-

ORANGE,
February,
1833.

Town of
Bradford
vs.
Town of
Lunenburgh.

ther, holds as to their settlement with the mother. The reason why children shall not gain a settlement where the widow gains a settlement only by intermarriage is, because it is not then the mother's family, but her husband's; and she cannot give the children any sustenance without the husband's leave; but, in this case, since she is equally punishable with her husband for deserting her children, and therefore could not leave them behind her, they must gain a settlement with her."—*St. George* vs. *St. Katharine,* 14 Petersd. 438, No. 5.

What is said above, is recognized as law, in the case between the parishes of *Paulsbury* and *Woodon,* 2 Strange, 746; though in this case, the Court said, "if it had been *res integra,* they should have doubted whether a settlement, gained under the head of the family, could be divested by a derivative one from the inferior."

But in the case of *Dedham* vs. *Natick,* 16 Mass. Rep. 135, *Wild* J. says, "Notwithstanding the doubt expressed by the Court, in the case last referred to, (between *Paulsbury* and *Woodon*) I think the *English* decisions are conformable to the general principle, in respect to derivative settlements. The mother, after the death of the father, remains the head of the family. She has the like control over the minor children, as he had when living. She is bound to support them, if of sufficient ability; and they cannot, by law, be separated from her.

"These considerations appear to me sufficient to relieve the *English* decisions from all doubt, and to show that the law here was the same as it was in *England.* It did not there depend on the provisions of any act of Parliament; but on the principles of the common law."

In the case between *Bozrah* and *Stonington,* 4 Con. Rep. 373, *Hosmer,* Ch. J. says, "The settlement of the pauper, during his minority, and until he has become emancipated, equally follows that of the father, and that of the mother, acquired in her own right. If of sufficient ability, the obligation of a mother to provide for her children is the same as that of the father; and hence, on the same principles, a settlement is indifferently derived from either."

We see by the authorities quoted and referred to, that a minor may derive a settlement from the last settlement of

Orange,
*February,*
1833.

Town of
Bradford
*vs.*
Town of
Lunenburgh.

his father; or if his father be dead, and his mother, with-out marriage, acquires a new settlement, the minor may derive his settlement from her's. But if the minor be emancipated, he cannot derive a settlement from a settlement of his father or mother, acquired after his *emancipation.* This leads us to inquire, What is *emancipation?*

A child is not emancipated by separation from his parent, and therefore follows the parent's settlement, as part of his family, until it—1, is of age—2, has married—3, has gained a settlement for himself—4, or has contracted a relation inconsistent with the relation of parent and child; and by which, therefore, the parent loses all authority over him.—*Rex* vs. *The Inhabitants of Edgworth,* 3 T, R. 353.—*Rex* vs. *Inhabitants of Wetton cum Twambrookes,* Id. 355.—(See 14 Petersdorff, 441, *n.*)

A boy was hired by the week, and served as a weekly servant for two years, after which he obtained his own living by mole-catching, and occasionally visited, but never resided with his father's family; nor did his father exercise any control over him. He was held not to be emancipated, but to follow his father's settlement, acquired during his minority.—*Rex* vs. *Wilmington,* 5 B. & A. 523.

A daughter was separated from her father at the age of four years; she lived with, and was maintained by her grandfather, and entirely supported by him until his death, when she was seventeen. The grandfather devised the residue of his estate in trust, to pay the interest to his wife for life, who was thereout to maintain and educate this girl; and after the wife's decease, if during the girl's minority, the interest was to be applied to maintain and educate her; and upon her attaining twenty-one, the principal to be paid to her; or, in case of her death, to her issue. The Court held her not to be emancipated during her minority by these circumstances; for this separate provision could not deprive the parent of the right to the care and custody of his child, nor could it relieve him from the duty of maintaining her; and there can be no doubt, that while under twenty-one, she would follow her father's settlement.—*Rex* vs. *Uckfield,* 5 M. &. S. 214.—(See 14 Petersd. 318.)

In the above case, 4 Con. Rep. 373, *Hosmer* Ch. J. says,

Orange,
February,
1833.

Town of
Bradford
vs.
Town of
Lunenburgh.

" Whether the pauper was actually residing in the family of the mother, is no material question; but the only inquiry is, was he emancipated? If having attained the age of twenty-one years, he has left his parents' house, or has become married, or has gained a settlement in his own right, or has contracted a relation inconsistent with the idea of a subordinate situation in his parents' family, his emancipation is complete, and he has secured the tie, which might confer on him a settlement by derivation."

The pauper in this case was only 16 or 17 years of age, when his mother gained her new settlement in Newbury; and he was not married till a number of years afterwards. And before his mother's new settlement, he had gained no settlement for himself, nor contracted any relation inconsistent with the relation of parent and child, by which his mother lost her parental control over him.

This being true, it cannot be said he was *emancipated*, and could not derive a settlement from the new settlement of his mother. His being married a number of years afterwards, could not have a retroactive operation, and deprive him of his newly acquired settlement. His living with his *uncle*, while his mother was gaining her new settlement, and several years afterwards, is no evidence to show that he was *emancipated*. It is not necessary to decide, what would be the effect, if the pauper was under guardianship, when his mother was gaining her new settlement; for the case does not show that there was any guardian appointed.

On the whole, I am satisfied, that the pauper, mentioned in this case, was never *emancipated*, before his mother acquired her new settlement in Newbury, by residing there one year without being warned out of town; and that he derived a settlement from that new settlement of his mother in said Newbury in the year 1815, which appears to be his last legal settlement in this State, to which he ought to have been removed. The said order removing him from Bradford to Lunenburgh is erroneous, and must be quashed.

Hutchinson, C. J., *dissented.*—I cannot view this decision as correct, either by the authorities in England, or the rights and powers which our law seems to establish.

Town of
Bradford
vs.
Town of
Lunenburgh.

It seems a settled rule, in England, that every person, born there, has a legal settlement in some town or parish, to which there may be a removal, in case of becoming chageable. Every legitimate child, if its parents are foreigners, or have no legal settlement in England, has its settlement where born. If the settlement of the parents be in England, and be known, there the child has its settlement. If neither the settlement by birth nor parentage be known, its settlement is where its existence is first known. If the mother has a settlement in the realm, at the time of her marriage, and the father has no settlement in the realm, the children take the settlement of the mother. And a settlement once gained, in either of these ways, continues till another is gained.—See 2d Bott's Poor Laws, p. 13, 14 and 15.

The first settlement of the pauper, who is the subject of this controversy, was clearly in Lunenburgh, and so continued to be, till after the decease of his father, and till after he, the pauper, arrived at the age of fourteen years; the age at which he had a right to choose his own guardian.

The question now is, Did he lose that settlement, and become settled in Newbury, by his mother's leaving him at Lunenburgh, and going to Newbury, and residing there a full year, without being warned to depart according to the provision of the statute then in force?

This leads to the consideration of derivative settlements.

In one state of things, applicable to these, all the authorities agree. That is, children, moving with the father, and living as a part of his family, where he gains a new settlement, take that new settlement with the father. So, if they do not live with the father, but are under his control, and are living where, and as he directs, and do not become emancipated from him, it is considered the same as living with him. But, if they gain settlements for themselves, which they may do in various ways after they are seven years of age, in England, by this they lose their primitive settlement, and do not take the newly acquired settlement of the father. So far is this carried in England,

ORANGE,
February.
1833.

Town of
Bradford
vs.
Town of
Lunenburgh.

that an order of removal, removing one, who is much over seven years of age, to his primitive settlement, will be quashed, unless it contains a negative of his having acquired a settlement for himself.   I think, however, this would be more analogous to other decided cases, if the Court required proof, of such newly acquired settlement, to come from the other side.

The authorities seem to suppose, that emancipation may take place by the minor's living away from the control of the father; but I recollect no decision to that effect.— And, on the other hand, a man, coming of age, and moving with his father, and forming a part of his father's family while he acquires a new settlement, takes that settlement; and is not considered as emancipated.   But, when of age, he is considered emancipated of course, unless he does continue to be a part of his father's family.—See 2d Bott, p. 42.

Many cases are cited by the counsel, where it is decided, that children derive from their mother the settlement acquired by her, in her own right, after the decease of her husband.— See 2d Bott, p. 29, and to 33.   On the thirty-first page the Court say, " There is no distinction between the settlement of children with the father or mother; for they are as much her's as the father's; and nature obliges her as much as the father to provide for them; so does the law; and every argument that holds for their settlement with the father, holds as to their settlement with the mother." Something like this is also expressed in some of the other cases.   Yet I find no case, in which it was decided, that children thus take the settlement acquired by the mother, after the father's death, where the facts are stated at all, but what the facts were, that the children went and resided with the mother as a part of her family, or were in every sense under her control.   Where the children had a legal settlement in England at the decease of their father, whether acquired by birth, the parents having no settlement; or whether by taking their father's settlement; or by taking that of the mother before her marriage, the father having no settlement; wherever such settlement is lost by their having taken that of their mother, acquired after the decease of the father, it is where they remain a

ORANGE,
February,
1833.

Town of
Bradford
vs.
Town of
Lunenburgh.

part of the mother's family, and under her control while she acquires this new settlement in her own right : I say *in her own right;* because she can acquire no settlement for her children by a marriage with a second husband. She takes the settlement of her new husband for herself; but she does not communicate it to her children by a former husband.

If the reasons, before recited, for children's taking the after settlement of the mother, are given only in the cases where they remain under her control, and usually remain a part of her family, is it not fairly to be inferred, that, when they do not make a part of her family, and are not under her control, they are considered as emancipated, and do not take her newly acquired settlement? I must consider this a fair inference, till I discover some one case, in which the children have been adjudged to take the newly acquired settlement of the mother, though they were not a part of her family, nor under her control, when she acquired it, nor afterwards.

We may consider, for a moment, how that reasoning, thus adopted by the Courts in England, applies in this State. Our Probate Act is very particular in its provisions for the settlement of estates. It provides for the appointment of guardians over children till they are fourteen years of age : for the support of children till they are respectively seven years of age, from the estate of the deceased; and for minors, over fourteen years of age to make choice of their guardians, before the Judge of Probate can make any appointment. When these guardians are appointed, they have the control of the ward ; and must take care of the property, if any : and all the earnings belong, not to the mother, but to the ward. Unless she is appointed guardian, she has no control, against the guardian, either of the person or the property. If she is appointed guardian, she must account for the earnings of the ward the same as if she was not his mother.

The mother of this pauper was never appointed his guardian. She went to Newbury to live among her relations, and carried one or two other children with her. These she had under her control, though she made no attempt to keep house by herself and children. The pauper remained

for a time at Lunenburgh, where his legal settlement was. He then past some time with his uncle over the river, in New-Hampshire—then went to the State of New-York, and tarried till he was 29 years of age; when he moved into Bradford, where he clearly has no settlement. When he was thus left at Lunenburgh, he was over fourteen years of age; and, of course, had a right to choose his own guardian. It does not appear that he has ever seen his mother since that time; nor does it appear that he ever was in the town of Newbury in his life.

ORANGE,
*February,*
1833.

Town of
Bradford
*vs.*
Town of
Lunenburgh.

Now, in what class of cases should this pauper be considered? Surely not as belonging to his mother's family, when she gained her settlement in Newbury: for he was in no sense whatever a part of her family; nor in any degree under her control.—She had no right to such control: She made no attempt to exercise it. He was most clearly emancipated: as much so, as any man, at the age of twenty-one years, becomes emancipated by living no more with, or under the control of his father. The rule is, that a person, having a legal settlement, loses it only by gaining or deriving a new one. He takes a newly acquired settlement of the father, if not emancipated, and if he has gained none for himself. But, if either emancipated, or acquiring a settlement for himself, he does not take the new settlement of his father. This pauper's settlement was in Lunenburgh. He does not appear to have gained any other for himself. He became as fully emancipated from his mother, from and after her leaving him at Lunenburgh, and going herself to Newbury, as if he had then been twenty-one years of age. He was as far removed from her legal and actual control. His legal settlement remains at Lunenburgh. This appears to me as plain as any cause we have ever decided. When it first came up in the County Court, we considered it by no means free from difficulty. But I devoted much thought to it there, and came to the result I have now suggested; and have discovered no view of the case, nor any new authorities, which vary my opinion at all. Yet I must suppose my brethren more correct. They are well agreed in the decision they have made.