THE  TOWN  OF  SHARON v. THE  TOWN  OF  CABOT.

*Pauper.*

A pauper had separated from his wife who went to reside in the town of S.  The
pauper afterwards went to S., but without any purpose of remaining there any
length of time, or of living with his wife, but after his arrival they concluded to
live together, and he hired her boarded with a relative in S., and went himself to
work for a person in the same town and vicinity, but without having in contem-
plation any particular time during which he would remain there, and within a
few days thereafter he was taken sick and received assistance from the town.  *Held*,
that he had come to reside in the town of S. so as to justify a removal of him to
the town of his legal settlement.

A settlement acquired by a widow in her own right is not, since the revision of
the statutes in 1839, communicated to her minor children by her deceased husband,
who, at the time of their father's death, had a derivative settlement from him.

The provision in sec. 2 of ch. 15 of the Revised Statutes (Comp. Stat. ch. 17, sec. 2,)
applies only to cases in which persons had begun to acquire settlements in their
own right, and not to derivative settlements, which might have been thereafter
obtained but for the provisions of the first section of that chapter.

APPEAL from an order of removal of one Otis R. Collins from
Sharon to Cabot, made December 23d, 1854.    Plea, unduly
removed, and *that the pauper had not come to reside in Sharon*,
which pleas were traversed.   Trial by court by agreement of par-
ties, December Term, 1856,— UNDERWOOD, J., presiding.

It appeared that Thomas Collins, father of the pauper, had his
settlement in Cabot in April, 1831, when the pauper was born, and
that said Thomas died there in 1835; that in 1836 the pauper
went to live in Greensboro', with his uncle, John Alden; that
Cabot agreed with said Alden to keep the pauper till seven years
old, and to pay Alden for keeping him.   It appeared that the
pauper lived with Alden eleven or twelve years, and then went
roaming about from place to place, in this and other states, until he
was married, in August, 1852; that after he was married he lived
with his wife at said Greensboro' two or three months; that they
then went to Glover, where they lived until March, 1853, and then
went to Thetford and lived two months, and then to Manchester,
New Hampshire, and remained there and in Lawrence, New
Hampshire, until January, 1854, and then moved back to Greens-
boro' and lived there until April, 1854, and then went to Glover,
and lived there until August, 1854, when the pauper and his wife

parted, his wife going to Thetford to live with her mother, taking her trunk and clothing, from which place she afterwards went to one Chadwick's, in Sharon, who was her brother; that after the pauper's wife left Glover the pauper worked at different places there, until December, 1854, about Thanksgiving time, when he took his trunk and clothing, and all his effects, and went off roaming without any purpose of returning; and went to Chadwick's, in Sharon, where his wife was, to see a child she had, born after she left Glover, *but without any purpose of remaining there any length. of time, or of living with his wife;* that after the pauper arrived at Chadwick's *he and his wife concluded to live together again,* and he hired her boarded there by the week, and let himself to work for Chester Downer, in Sharon, where he worked twelve days, and then went to work for one Bascomb, in Sharon, and after working two days was taken sick, and being in need of relief, applied to the overseer of Sharon, who assisted him to the amount of twenty-eight dollars and fifty-six cents, and the order of removal was then made. It further appeared that *the pauper's mother went to Greensboro' to reside in 1837, where she resided about eleven years continuously, where she gained a settlement by such residence. The pauper had his trunk and clothing and all his effects with him at Sharon when the order was made,* but when he first went there to see his child, *he went with no fixed purpose of remaining there* any length of time, *and when he and his wife concluded to live together, and he hired her boarded at Chadwick's, as above stated, it did not appear that any particular time was in contemplation during which he should remain there.*

Upon these facts the court rendered judgment that the pauper's *last legal settlement was in Cabot,* and *that he had come to reside in Sharon at the time the order was made.* Exceptions by the town of Cabot.

*Peck & Colby,* for the town of Cabot.

*W. C. French,* for the town of Sharon.

The opinion of the court was delivered by

ISHAM, J. This is an appeal from an order of removal of one

Otis R. Collins, a pauper, from the town of Sharon to the town of Cabot. The case was tried under the issues, whether the pauper *was duly removed*, and whether, previous to the order of removal being made, he had *come to the town of Sharon to reside*. In relation to the residence of the pauper at Sharon previous to, and at the time· the order of removal was made, we perceive no error in the ruling of the county court. If the question is regarded as one of fact, it is conclusively determined by the finding of the .county court. If it is a question of law, the case of *Middlebury* v. *Waltham*, 6 Vt. 200, is decisive of this case.

The remaining inquiry in the case arises, whether the pauper had his legal settlement in Cabot, to which place the order of removal was made. Thomas Collins, the father of the pauper, had his legal settlement in Cabot until his decease in 1835, in which place the pauper was born in April, 1831. The pauper therefore obtained a derivative settlement from his father in Cabot. It is not pretended that the pauper has obtained in his own right a settlement in any other town in this state. Under those circumstances this order of removal was properly made, unless the pauper subsequently obtained a derivative settlement in Greensboro' in the right of his mother. It appears in the case that the pauper was about the age of four years at the decease of his father, and that in 1837 his mother went to Greensboro' to reside, and that she gained a legal settlement in that town by residence. If this pauper obtained a derivative settlement in Greensboro' in the right of his mother, this order of removal to .Cabot was unduly made. The case of *Bradford* v. *Lunenburgh*, 5 Vt. 481, was decided previous to the Revised Statutes of 1839. In that case it was held that " A child derives a settlement from his father; and if his father dies, and his mother subsequently acquires a new settlement, the child derives the settlement of his mother." The same rule prevails in Connecticut; 4 Conn. 373; and such seems to be the settled rule of the English cases; Lord RAY 1474; 2 Botts' Poor Laws, 32, pl. 58 to 62; 2 Strange 746. That rule rests upon the general principle that the father during life is under obligation to support the minor children, so long as they form a part of the family, and after his decease that obligation rests upon the mother. If the mother of this pauper had acquired her settlement in Greensboro' previous

to the act of 1839, it is probable the pauper would have obtained a derivative settlement from her in that town. Such would have been the case unless the residence of the pauper when a child in the family of Mr. Alden by the procurement of the town of Cabot would be regarded as an emancipation.

In the revision of the statutes in 1839, different provisions were made. By that act, p. 128, sec. 1, it is provided that " Legitimate children shall follow and have the settlement of their father, if he have any within the state, *until they gain a settlement of their own.*" It is only where the father *has no legal settlement in the state,* that the children follow and have the settlement of their mother. It is a matter of express provision that this pauper shall have a derivative settlement from his father in Cabot, and that *he shall retain that settlement* until he acquires one in his own right. His settlement cannot be changed by any other act or event. No other exception is made in the act. The pauper never having acquired any other settlement in his own right, he still retains his derivative settlement in Cabot, to which place we think the order of removal was properly made.

The second section of the act of 1839 excepts from its provisions all persons who have begun to acquire a settlement under the operation of former laws. It is under the provisions of this section the mother acquired her settlement in Greensboro', though this act was passed before her settlement was perfected. But that provision has no effect in this case. It applies to those cases only where persons have begun to acquire settlements in their own rights. It cannot be said that this pauper had begun to acquire a derivative settlement in Greensboro' previous to the act of 1839, when his mother had not then a settlement in that town, and possibly might never have acquired one; *Poultney* v. *Glover,* 23 Vt. 328. We think the pauper's legal settlement was in Cabot, and that the order of removal was duly made.

Judgment affirmed.