TOWN OF TUNBRIDGE *v*. TOWN OF EDEN.

*Pauper. Removal. Emancipation.*

An infant may be emancipated by being given away by its parents, and in such case would not derive a settlement from a subsequently acquired settlement of its father.

In order to constitute emancipation of an infant by gift, it must appear that its parents have absolutely transferred all their right to the care and control of the infant, and all their right to its services, and that the person to whom such rights are transferred, has accepted the infant as his own and agreed to stand *in loco parentis*.

The pauper in question, a *non compos mentis*, was emancipated by being given away at the age of eighteen months. At the age of five years he was removed to Tunbridge where he held a derivative settlement from his father, and was supported by Tunbridge until he was removed to Eden,—the father in the meantime having removed from Tunbridge to Eden and gained a settlement by seven years continuous residence in Eden, which terminated two years before the removal of the pauper to Eden. *Held*, that the pauper derived no settlement from the settlement acquired by the father in Eden, and that Tunbridge was bound to support him, unless his father was able to.

APPEAL from an order of removal of a pauper. The case was tried by the court at the June Term, 1865, PECK, J. presiding, on an agreed statement of facts as follows:

The pauper, George Lunt, is a minor of about the age of nineteen years, and is the legitimate son of John Lunt. The said John Lunt now resides in Eden and did reside there at the time of the removal of the pauper from Tunbridge to Eden, and had his legal settlement

in Eden.   John Lunt formerly resided in Tunbridge and had his legal settlement there before removing to Eden, and his settlement continued in Tunbridge until he gained a settlement in Eden.

The pauper is and always has been a *non compos mentis* and has not resided in the family of his father, nor been maintained by him since he was about eighteen months old.   At the time he was about eighteen months old the father and mother of the said pauper gave him to one Norman Cook, who was then and still is residing in the town of Washington, Vt., to keep as his own child, where the said pauper remained and was taken care of till he was about five years old—when, by an order of removal he was removed to the town of Tunbridge where he at the time held a derivative settlement from his father, John Lunt.   Said pauper was then supported by Tunbridge until he was removed to the town of Eden ; John Lunt in the meantime having removed from Tunbridge to Eden and gained a settlement by a seven years continuous residence in Eden, which seven years residence terminated about two years before the removal of the pauper to Eden as aforesaid.

The court decided that the pauper's last legal settlement was in Eden, and that he was duly removed—to which the defendant town excepted.

There was also a motion to quash the order of removal, in respect to which the court expressed no opinion.

*Brigham & Waterman* and *G. W. Hendee*, for the defendants.

I.   The doctrine of emancipation with respect to derivative settlements is well settled.   After emancipation the child does not follow the settlement of the father subsequently acquired but retains that which it had at the time of its emancipation.   *Poultney* v. *Glover*, 23 Vt. 328 ; *Bradford* v. *Lunenburg*, 5 Vt. 481 ; *Springfield* v. *Wilbraham*, 4 Mass. 493.

The only question which arises upon this branch of the case is, was the pauper emancipated previous to his father's gaining a new settlement in Eden?

According to the authorities, the question of emancipation turns upon the point whether the child is, or is not, under the control of

the parent, or is under a different control incompatible with that of the parent. *Cases above cited,* also see 2 Dane's Abr. 107, § 15; *Charlestown* v. *Boston,* 13 Mass. 469; *King* v. *Roach,* 6 Term, R., 247; *Walpole* v. *Wisbeach,* Burr, S. C. 638; *Hardwick* v. *Pawlet,* 36 Vt. 320. This was a strong case of emancipation.

The fact that the pauper was *non compos* would not affect his emancipation.

*Wm. Hebard,* for the plaintiffs.

The pauper was a minor of the age of nineteen years, and the legitimate son of John Lunt. Legitimate children follow and have the settlement of their father. Comp. Stat. 128, § 1. John Lunt the father of the pauper at the time had his legal settlement in Eden. Consequently the settlement of the pauper was in Eden, as a minor cannot gain a settlement in his own right. *Benson* v. *West Haven,* Brayt. 187; *Hartford* v. *Hartland,* 19 Vt. 392. Nor was the pauper *emancipated* so as to prevent him from taking the settlement of the father. *Bradford* v. *Lunenburg,* 5 Vt. 481; *Rupert* v. *Sandgate,* 10 Vt. 278. It is doubtful whether the doctrine of emancipation can obtain under our statute.

The opinion of the court was delivered by

WILSON, J. The important inquiry is whether the pauper was so emancipated that he could not take derivatively from the settlement subsequently acquired by his father. It is conceded that the father of the pauper formerly resided in Tunbridge where he gained a legal settlement, and that the pauper at the same time held a derivative settlement from his father in Tunbridge. It is also conceded that subsequently to the alleged emancipation of the pauper, his father by seven years continuous residence in the town of Eden acquired a legal settlement in the latter town. The principal facts upon which the question of emancipation is to be determined are as follows: "That at the time the pauper was about eighteen months old the father and mother of the pauper gave him to one Norman Cook, who was then and still is residing in the town of Washington, Vt., to keep as his own child, where the pauper remained and was

taken care of till he was about five years old." It is urged by the plaintiff that under our statute children, especially minors, should be held to take derivatively the settlement of the father until they have acquired one in their own right, without regard to the question whether they continue members of the father's family and under his control. But we think such construction of the statute is not warranted by authority or upon principle. In *Poultney* v. *Glover*, 23 Vt., 328, the doctrine of emancipation is fully recognized and approved. In *Bradford* v. *Lunenburgh*, 5 Vt. 481, the question was whether the child derived a settlement from the settlement of his mother acquired subsequently to the death of her husband. It was held in that case that if, before the mother acquired her new settlement, the child was of age, or had married, or had gained a settlement for himself, or had contracted any relation inconsistent with the relation of parent and child, and by which the mother lost her government over him, then he was emancipated. In *Springfield* v. *Wilbraham*, 4 Mass., 493, PARSON, C. J., says : " Wives and children may have derivative settlements, because the husband and father have the legal control of their persons, and the right to their services, but when the father ceases to have any control over his children, or any right to their services it is not easy to devise any good reason why they should not be considered as emancipated, and as no longer having a derivative settlement with the father on his acquiring a new settlement, and when the reason ceases the law founded on that reason also ceases." That case goes upon the ground that the principle of derivative settlements is founded on the right of the father to the services of his children and to the control of their persons. In *Portland* v. *New Gloucester*, 4 Shepley, 427, it appeared that the father of the pauper gave him away before he was two years old to one Sanborn and wife then living in New Gloucester, to be brought up as their own child ; and the father never after exercised any control over him, never supplied him with any thing, never took care of him or received any thing from him ; and the court held that the pauper was emancipated. Emancipation under the pauper law exists, when the minor contracts a new relation inconsistent with being a part of the family. *Wells* v. *West Haven*, 5 Vt. 326. It is well settled that a mere residence

separate from the family of the parents is not emancipation. 3 T. R. 353; 3 N. H. 472; 5 Vt. 481. In *Sherburne* v. *Hartland*, 37 Vt., 528, the court held that marriage emancipates the child, that it is a new relation inconsistent with subjection to the control and love of the parent. The new relation, inconsistent with the relation of parent and child, which constitutes emancipation, may be contracted by the minor by consent of his parents as in case of marriage; or if the minor be an infant, the new relation may be contracted by his parents for the infant. In order to constitute emancipation of an infant it must appear that his parents have absolutely transferred all their right to the care and control of the infant; and all their right to his services, and that the person to whom such rights are transferred has accepted the infant as his own and agreed to stand *in loco parentis.* It should clearly appear that such was the intention of the parties. In this case it appears that when the pauper was about eighteen months old the father and mother of the pauper gave him to Norman Cook to keep as his own child. There is nothing in the case which shows that Cook was not a suitable person to have the custody, care and maintenance of the infant. The gift of the pauper by his father and mother to Cook was absolute. It depended upon no condition or contingency, the breach or happening of which would restore the child to his natural parents, or revive their right to his services, or their right to the control of his person. It was a gift binding on the parents of the pauper, and such appears to have been their understanding of the matter, for it does not appear, nor is it claimed that the father or mother, after that exercised any control over the child, or supplied him with anything, or took care of him or received anything from him. And it is equally clear that Cook received the child for the purpose and with the intention expressed, viz : to keep him as his own child; which language imports that he agreed to take and did take upon himself the duties and obligations of a natural parent. That such was the understanding of the parties at the time of the emancipation is apparent from the subsequent conduct of the parents in their observance of the agreement, and that of Cook in receiving the child and carrying out the understanding for the period of about four years. The infant under that agree-

ment became a member of Cook's family and subject to his care, control and authority. The infant thereafter was not known or recognized as a member of his father's family; and the new relation of the infant to Cook was wholly inconsistent with subjection to the control and care of his parents. It appears that the parents of the pauper strictly observed their contract with Cook, and the fact that Cook permitted the infant to become a pauper is of no importance in determining whether he was emancipated. Upon the facts submitted we are entirely agreed that the pauper was emancipated prior to the father's settlement being perfected in Eden; from which it follows that the pauper did not derive a settlement from the settlement subsequently acquired by his father.

By the common law it is the duty of parents to support their minor children, and this duty is founded on the law of nature. It is created by the incapacity of the minor to support himself, and when such incapacity ceases the obligation is at an end. The law has fixed the time of minority, and in ordinary cases the incapacity of the minor, on his coming of age ceases in fact as well as in presumption of law, and with it ceases all moral obligation on the part of the parent, unless the child is, in fact, unable to maintain himself at the expiration of that period. The duty of supporting adult children in case of their inability to support themselves is, in England, enforced by statute, and similar statutes have been enacted in most if not all the states in the Union. The statute of this state makes it the duty of the kindred of any poor person who shall have become chargeable to any town, in the line or degree of father or grandfather, mother or grandmother, children or grand-children by consanguinity, living within this state, and of sufficient ability to support such pauper in proportion to their respective ability. This statute imposes on such relatives obligations unknown to the common law, and it would seem from the language of the statute that such support could be enforced without regard to whether the pauper be a minor child or an adult. The doctrine of emancipation of minor children is founded on principles of equity, humanity and domestic policy. The history of this most universal and important domestic relation, furnishes conclusive proof that the parent, by reason of misfortunes, arising from circumstances over which he had no control, or from habits of intemperance and

idleness, may be wholly unable to support and educate his offspring, or incapable of having the control of their person. The principle of emancipation is held to depend upon rights which may be waived or transferred, and not upon duties which are matter of legal or moral obligation.

The necessity and propriety of emancipation of minor children who are capable of supporting themselves, may arise from the situation and circumstances of the parent, and its consummation may be and usually is dictated by considerations which relate almost exclusively to their present and future interests and prosperity in life. The necessity for the emancipation of infants may arise from absolute inability of the father to provide for their support. To relieve minor children from sharing the misfortunes of their parents, to prevent consequent discouragement and encourage in them industrial and business habits, to save helpless infants from becoming town paupers, to relieve unfortunate parents from a burden which they are unable to bear, and to place within the reach of their children at least the ordinary advantages of education, to give opportunity for the development of those higher intellectual powers with which many such children are gifted, and to qualify them for the duties of manhood and self government, new relations are contracted by which the parent ceases to have any control over the person of his child, or right to his services. Such are some of the special objects of the emancipation of minor children. These new relations ordinarily arise from pure motives, and their result proves beneficial. The new relation may prove advantageous to the parent. He may be able by the emancipation of his child and the temporary relief thereby afforded to support the remainder of his family and perfect a settlement already commenced, or subsequently to acquire a new settlement. In this case the settlement in Eden of the father of the pauper was not acquired by a property qualification, nor by holding office, but it was acquired by seven years continuous residence. The pauper was emancipated prior to the commencement of the residence of his father in Eden, which resulted in his settlement in that town. Cook, by the act of taking the child, held him out to the world as a part of his family. The pauper was not a member of his father's family at any time during the period in which the new settlement of

Tunbridge *v.* Eden.

the father was acquired. The town of Eden had the right to act, and the presumption is that they did act upon the pecuniary circum stances of the father and the number and situation of his family in Eden, while he was acquiring his settlement there, in deciding whether he was likely to become chargeable to that town as a pauper ; and as to the propriety of instituting proceedings under the statute to prevent his acquiring a settlement. And the town of Eden was not bound to treat, and they could not treat this pauper as a member of his father's family in deciding as to the probability of his becoming a town charge if the father should acquire a settlement in that town. And to hold that it is not in the power of the parent to so emancipate his minor child that the child can not take derivatively a settlement subsequently acquired by the father, might do manifest injustice to the town in which the new settlement of the father was acquired, and it would be inconsistent with, and totally repugnant to the principle on which the doctrine of derivative settlements is founded. Ordinarily it is a matter of little or no importance to a pauper from what town he obtains his support. The statute makes ample provision for the support of the poor, though they have no legal settlement in any town in the state. It does not appear that this pauper has lost anything by his emancipation, unless it be the right to take derivatively the settlement of his father subsequently acquired in Eden ; and it should be remembered that the father might not have been able to acquire that settlement, if he had not been relieved from the support of an unfortunate and helpless child. But the father did not by the emancipation relieve himself from the duty of supporting the pauper. The moral and legal obligation of the father to furnish support still exists, and may be enforced by law if he be of sufficient ability. And the pauper still retains his settlement derived from the former settlement of his father in Tunbridge, and we think upon equitable as well as legal principles the town of Tunbridge should provide for his support. The views above expressed render it unnecessary to consider the other questions raised by the bill of exceptions.

The result is that the judgment of the county court is reversed and judgment for the defendant that the pauper was unduly removed.